The next matter, No. 241913, Franzer-Fleurimond v. Pamela J. Bondi. At this time, would counsel for the petitioner please introduce himself on the record to begin? Good morning, Your Honors. May it please the Court? Sang-Yup Kim for petitioner. Chief Judge Behr, may I reserve one minute for rebuttal? Thank you. The dispositive issue in this case is about the expert evidence issue, and I want to start with the context. First, the proposed expert had abundant knowledge, which was cited in all other journals by other law schools, as well as she has been in contact with the government officials, and so on. Now, second context. The Department of Homeland Security had no counter-expert to rebut the basis of her opinion or her opinion itself. Third, the only evidence that could have been submitted for the purpose of impeaching her was the fact that, in part, the fact that she worked for a particular non-governmental institution, and even that organization was cited by the U.S. State Department in the Human Rights Report. What would her testimony have shown that you think, if included, would demonstrate that it was prejudicial to exclude it? So based on the appearance of bias, I presume. No, no. Let's say you're right. They didn't have a good reason. They included it for purposes of what the conditions were, but they excluded it for purposes of trying to figure out this phrase, which is a little hard for me to understand, the social and cultural, I forget exactly what, treatment of criminal deterrence, because she didn't have institutional knowledge. Let's say that her testimony about the institutional knowledge came in. I'm just having trouble seeing, I didn't see anything in the brief explaining why it was prejudicial to exclude it in the sense that the outcome would have been affected if it had been included. So the agency did not exclude her testimony, so here is not a case where the agency disqualified her and then excluded her. They kept in part of it, but then they said, we're not going to consider parts of it, I think. So we do consider it for conditions, but not for this other part. Is that right? So the agency's decision is unclear as to what aspects of the proposed expert's testimony that agency considered. I thought they did consider it with respect to the individual treatment that she observed in prisons of people. What other aspect of the testimony are you saying was not considered, and why, given that part of it, would it make a difference in this case, given the agency's reasoning? That's the part I didn't see in the brief. I apologize. So about her opinion. So the main difference between the lay witness and expert witness is about the opinion, the basis of that opinion. So the way that I interpret the agency's decision, the reasoning, is it appears that IJ did consider her observation. I'm not focused on whether they made a mistake in excluding her. I'm trying to figure out how it hurt you that they did. What did she say? What content is in there that if we had it your way and we concluded it had to be considered would have made any difference in the outcome of the case? So it's not because, and I don't think it hurts petitioner's position either, because the IJ actually accepted her opinion, her observation as to the extrajudicial killing happens in prison setting. So we can just move on to, you have a separate argument, which is as to the extrajudicial killing, that it's hard to see how that's not for the purpose of inflicting pain and  Right. So that's one way to resolve it. So I want to move on to the second issue. But I'd be happy to answer about the expert issue at any time if there's any questions. So our main argument is the fact that BI did not address the question of whether the low-ranking officer commit the torture in the prison in Haiti. The reason is the BI's decision only focuses on the maintenance of or creating such conditions. And that's really not, that was one claim, but that was not the all claims that petitioner raised before the BIA. The claim was, which is critical in this case, because the BI did not address is whether the low-ranking officer commits torture. And the government's response to that is the references in the BIA's decision to other components of the government and your response to that, or other individuals in the government. What's your response to that? Two responses to that. One is, the IJ's decision appears that IJ did consider all component of the officers, all levels. So including which means higher level to the low-ranking. The BI's decision only focuses on those, even though BI does not actually say high level, higher level, focuses only those who are in response of creating and maintaining such conditions. So that's credible evidence to show that the BI did not actually address the claim that we are arguing. Now, second response, if that's actually not the case, then there's a serious question of why extra judicial killing by an officer does not constitute torture. Because if that's not torture, I do not, just logically, I don't know which act would be constituted as torture. Now, there's a problem with IJ's decision, separately, which is about requiring the purpose of torturing someone on top of the specific intent. We don't even get to that issue based on this other theory.  Yes. And the court does not even need to get to the issue because that's different analysis that BIA provided. So one way for the court to adjudicate this, if the court agreed with us on this, the BIA's failure to address the torture committed by a low-ranking officer, even though the BIA upheld the fact-finding by the IJ that extra judicial killing by an officer occurred in prison in Haiti. Now, if the court were... Because there was no finding about the likelihood, insofar as that occurs, the likelihood of that occurring to your client, there was no finding on that score. So that's not an independent basis for denying the petition.  That's not... And the way that I read the respondent's brief was respondent agrees with that point. I think that's page 33 of footnote 6, that the agency did not explicitly find... Or there's no... The agency does not reflect the agency's rate of finding. And because the agency did not address that claim, that should be addressed on remand if the court were to vacate the BIA's decision. And just so I understand it, the evidence you have of extrajudicial killings, with respect to the likelihood aspect of the CAT claim, how does that play out in your view? I mean, so there's evidence that it's happening, it's not happening... There's no frequency testimony that I saw about how often it happens. And obviously, the longer this person's in detention, the more likely it is to happen. So it's significant that there's not a finding that the detention wouldn't be prolonged. Understand that. So I guess you don't have evidence showing that it would be prolonged, right? So that would be a disputed issue on remand, because... Is there some affirmative evidence that it would be prolonged? Yes. The expert evidence does talk about... Because the... Particularly the affidavit of the proposed expert does talk about, because the petitioner is not just about the person with a criminal record, but because of mental illness. And she emphasized that likely be detained. So does that make it, then, that is what's significant? Would it matter on remand whether that expert could be introduced? Because then there would be affirmative testimony about how long the person might be detained, and that would then bear on how likely it is that they might be subject to the extrajudicial killings, because if you just do a probabilistic analysis, it becomes more likely to happen the longer they're there. So yes and no, I apologize. Okay. So I think for the judiciary economy of this court, this court can allow the agency to address all claim on remand if the court were to agree with us. But it's already ruled on the expert thing. Unless we reversed on the expert, there'd be no way of getting that expert testimony in on remand, would there be? But the way that the agency denied the case was not exclusion of the expert evidence. The agency still relied on the observation of... But we don't know, because the agency did not opine on the probability, we actually do not know what the agency's position on the probability that that portion of the expert testimony that expert provided. So because there's no finding, there's no reference in the IJ's decision... We don't know if it was considering it or excluding it. And so basically, we don't know whether that will become a disputed issue or not. And another reason why I emphasize this is because the way the petitioner argued... Do you consider that question, that aspect of the testimony, as relating to the treatment of prisoners so that it would seem to fall in the bucket that the agency's already determined is within her expertise? Or do you consider that as falling within the bucket of the social and cultural treatment of criminal deportees, which is the part that the agency seemed to treat as not within her expertise? So I think all of her testimony, including the probability and everything, would fall into the bucket of the expertise, however... No, no. As I read the agency's decision, they described some of her testimony as concerning the treatment of people in Haitian prisons based on her observations. And they seem to credit that as something within her experience that she could testify about. With respect to this broader thing about the cultural and social treatment of criminal deportees, as I read it, they seem to say, no, she does not have sufficient academic rigor to testify about that. I'm asking whether you think the testimony she provided that would bear on the likelihood of your client being in prolonged detention based on his mental illness is properly understood as testimony of the kind that relates to her experience with how people are treated in Haitian prisons, or testimony that she provided that relates to the social and cultural treatment of criminal deportees in Haiti. Because it might bear on whether it's of relevance for us to resolve the expert question insofar as we're going to remand at all. It's a little bit difficult to say because the agency's decision is not clear at all. I understand Your Honor's point of the difference between the treatment of the deportees in Haiti versus the social and cultural, and they can be intertwined in terms of providing or showing the probability of detention because that is directly connected, that is at least connected to the cultural aspect of the country, how the country views the person with a mental illness, particularly in a prison setting. But the reason why it's still difficult to say whether I see it as the bucket goes to the treatment versus the social and cultural is because the agency's decision is not clear at all on that point. So that's why it's a little bit difficult. Again, we believe that that issue... What was the basis for her testimony about him being likely subject to longer detention because of his mental illness? Because of the... There are a couple of the key points that she provided. One was about the culture aspect of the country, how the country views the people... Was part of it based on her observation of who was in the prisons also? Yes, and on top of her reliance on the secondary sources, other sources of the, for example, State Department, Human Rights Report, and other reports. Some of it was based on her observation in prisons of who was there or not. I have to get back to you on that. I apologize. I think yes, but I still want to confirm that during my brother's time and then get back to the court for the rebuttal time. So again, just to summarize, there are two ways to address this question, but I think one way is for the court to vacate the BI decision because the BI failed to address the specific claim of the torture by the low-ranking officer in prison in Haiti. And again, the probability of detention, probability of prolonged detention were not issues. And that's why the Petitioner's Council petition did argue before the BI that I.J. actually found that the petition was going to be detained in a prolonged manner. I think the reason why the petition made that argument was because I.J. just did not question about it. But more objectively, I.J. does not just opine on anything. So at least for the purpose of this court's review, I.J. did not opine on those points and they're not before this court. One last question. Was there any evidence in the record of the frequency of the extrajudicial killings and beatings occurring by low-level people in Haitian prisons? If I may, may I come back to the court? I just want to have a clear record. Thank you. Thank you. Thank you. At this time, would counsel for the respondent please introduce himself on the record to begin? Good morning, Robert Tennyson for the government. Let me quickly answer two questions you had for counsel. Yes, the petitioner's expert or proposed expert discussed individually persons who were, for example, who was just forgotten about by police in detention. So there was discussion from her personal experience about that. In fact, most of the petitioner's proposed expert's testimony came from that personal experience. So would it be the case that evidence relating to the likely length of detention insofar as she provided evidence supportive of that conclusion that it would be likely long? Your view is that the agency has not excluded that? The agency has not excluded that. The only parts of her testimony that they excluded had to do with that social and political environment. And what does that mean? My understanding is it has to do with, say, for example, her testimony that a quarter of the police work with gangs or that Bwakali, you know, operates broadly with, you know, in particular ways in the country, right? That those are general statements outside of her expertise as an advocate, specific advocate for criminal deportees. And that's that is what she knows about. And I think the immigration judge didn't abuse discretion in finding that, you know, that narrow range of advocacy created the parameters of what she could testify to, that she didn't have any expertise in sort of the broader general culture in Haiti. But moving on from there, there was a second question you had, and now... Likelihood or frequency of beatings and... My recollection going through the testimony is that there is no discussion of, at least since the time that they've restarted the, I guess what, the detaining of deportees recently, and it's not clear that it's still going on from the end of her testimony, that there were problems with that, that there was nothing about the frequency with which that was happening. But no finding by the agency that the reason the CAT claim fails is because it was too infrequent an occurrence to be likelihood. There is no... That is not the basis. It has to do with specific intent. And really, I mean, getting down to that point in the prisons, because I don't think... What would happen with the government and their motives with regard to maintaining the prisons, with the extrajudicial killings, we don't have any idea from that evidence the context in which those extrajudicial killings occur, whether or not it is... They're taken with a specific intent to cause severe harm or something like that, or you just have prison guards or something like that in the context. What's the context in which you kill someone without trying to cause severe harm?  I mean, and the thing is, is that you have... When you say... When you say... Right. You have, for example... You keep saying right, but it seems like the... Oh. You wouldn't want to say that. I wouldn't want to say that. So the way in which you could see that happening is that you could have prison guards, say, attempting to maintain order in a very disorderly and very resource-light environment that results in someone being killed, right? There's no specific intent to cause severe pain or anything like that. It's just an attempt... It's an accidental killing. It's an accidental killing. It's extrajudicial, certainly, but it's not an intent to cause severe pain. If we don't know what that is, then the petitioner hasn't... You think it's fair to construe killing as referring to the accidental ones? To accidental killings, or, yeah, within that context. We don't know enough to know. What about beatings? Beatings, those also occur, but, I mean, in the Senate report having to do with Kat, one of the things that they left out as being cruel and, you know, terrible occurrences is a police beating. I mean, it is cruel and unfortunate and harassment. It is awful, but, you know, it doesn't have necessarily that specific intent to cause severe harm, and that's what all of the, you know, everything within the prison context turns on. And so, unless we have enough evidence about what those extrajudicial killings are, about what those beatings are, and what the intent with regard to those are, and we don't... The agency's decision is clear enough in setting forth this rationale for rejecting that evidence? It's not a paragon of clarity. I certainly will agree with you on that. But as the court said in Ming Dai, we don't need to have a paragon of clarity. No, but... We need to be able to drive... Our demand for clarity might go up the more the thing they're not clear about is something that's not intuitive. Right. I can perfectly understand that point, but I think here the immigration judge's decision was clear enough on that point that... What passage are you referring to where it's clear that what they're doing is saying the extrajudicial killings doesn't show evidence of pain because it was likely accidental? Right, we don't have that. All we have is there's extrajudicial killings. The immigration judge is saying, yes, those exist. But the immigration judge is also saying there's no specific intent here. There has to be a line that draws between those two, that there's something that has to make those extrajudicial killings ones where we can say, aha, there's specific intent. Moving on to whether or not the board ignored the petitioner's argument with regard to those mid-level government officials. What the board said is we declined to disturb the immigration judge's finding with regard to government treatment in the prisons. That would seem to indicate that that... And aside to the IJ, that would seem to indicate that they... With regard to government, that seems to indicate all levels of government that they are refusing to touch the IJ's reasoning in that regard. So the board did consider it, and it just said, we're not going to change what the immigration judge said here. We're going to uphold that. With regard to the treatment outside of prisons, does this court have any question on that? So the petitioner's argument with regard to his friend's father, named Haiti, and his feared torture in Haiti as a result of the father's actions, the immigration judge here found that it would not occur with the acquiescence of the police within the country. And part of that was because it had to do with partially the state falling apart and because we didn't have... You don't have a state to a large extent. You have a failed state. You can't have state action, right? And the other part was that you hadn't shown that despite the fact that you have widespread police interaction with gangs, you have things in the CRS that indicates that there is interaction with gangs, that you can't show... There was no particularized evidence that showed that there would be acquiescence by the police or any other government agency outside in that regard, either with regard to the potential killings by Haiti or with regard to actions by gangs or Boikale. This court doesn't have any further questions of me. The government will rest. Thank you, counsel. At this time, would counsel for the petitioner please reintroduce himself? He has a one-minute rebuttal. May police court sing your king for petitioner. I will just address the two questions that Chief Judge Barron had. So the first question was whether there was evidence of the probability of prolonged detention. There was. The administrative record 1120, that's the proposed experts affidavit and a paragraph 155, and she says, quote, greater risk of being detained illegally and indefinitely in a police station holding cell or in one of Haiti's national prisons in life threat and in conditions. So there was an evidence of the probability of detention and prolonged detention. The second question is the probability of the extrajudicial killing or otherwise the corporate punishment, extrajudicial punishment. So there was another evidence, the same affidavit, record 1087, paragraph 51. She said Haitian police and corrections officers use and have in fact increased their use of record practice such as corporate punishment, torture and extrajudicial killing. So there was an evidence in the experts, proposed experts affidavit about the probability of this unlawful practice. I just want to note, if I may, just one point. Based on our reading of the record, there was not even any point of possible accidental killing. It's a long record, but I don't think that was even considered as a possibility based on the testimony, the IJ's decision or the BI's decision. But if the court has concern over that, the accidental killing, that could be addressed by the agency on remand. Thank you, Your Honor. Counsel, that concludes the argument in this case.